In re ENGLER'S ESTATE.

Circuit Court, Dade County, Civil Appeal.
December 15, 1952.

Joseph A. Wanick, Miami Beach, for appellant.

Walterman & Touby, Miami, for the widow.

E. Albert Pallot, Miami, for appellees.

VINCENT C. GIBLIN, Circuit Judge.

*October 30, 1952:* This cause has been heard and considered on the appellant's motion (filed October 12, 1952) "to amend."

The court construes the motion as one for the reinstatement of the appeal which, by Judge Morris' order of October 10, 1952, was dismissed.

As so construed, the motion is granted and the appeal (from an order made July 15, 1952 by the judge below), notice of which was filed August 7, 1952, is reinstated because I am of the opinion that the failure of the appellant to direct the clerk below to transmit the original court file to this court was not an omission divesting this court of jurisdiction. Inasmuch as the omission has been supplied I think the merits of the appeal should be considered.

*December 15, 1952:* The evidence in the court below produced no substantial factual dispute.

Approximately a year prior to his death Jacob Engler delivered to his nephew and confidant, Samuel J. Tritt, a sealed envelope in which Engler had placed two stock certificates evidencing his ownership of all the issued and outstanding capital stock of Growers Supply Exchange, Inc. The envelope had Engler's name on it, but no other writing. The certificates were endorsed in blank. At the time of the delivery Engler requested that after his death the envelope and its contents be given by Tritt to Engler's two daughters, Ida Forer and Molly Keselman, and opened by them when together. Tritt was not requested to advise the daughters of the delivery to him of the envelope. Mrs. Forer testified, however, that her father had told her of the delivery of the envelope to Tritt.

Growers Supply Exchange, Inc. has leased for a term of fifty years valuable real estate in Dade County which it owns. Its interest in such property is its principal, if not its only, asset; and, indirectly, was Engler's principal asset.

There was no transfer of the stock on the corporation books prior to Engler's death. He continued to dominate, control and direct the corporation's business and affairs. The rental proceeds, withdrawn from the corporate bank account as salary (for tax purposes), were his principal source of income. He used the money for his own purposes. Neither of the daughters received any of it.

Subsequent to the delivery of the envelope and stock certificates to Tritt, Engler discussed with his attorney, Herman Berk, and with Tritt, a plan for the sale by Engler of the stock to one of the daughters, Mrs. Forer, for $25,000. The attorney advised that the effectuation of the plan would likely create ill feeling between

the two daughters and perhaps a marital rift between Engler and his wife. Because of such advice Engler abandoned the plan. Tritt testified that his uncle was a very changeable man and had suggested several different plans for the disposition of the stock after his death.

The county judge held that in the circumstances there was a valid, completed and irrevocable gift inter vivos and that the stock is not a part of Jacob Engler's estate (in which his widow is to share). I am impelled to a contrary conclusion by the decisions in Hill v. Hill (Maine), 67 Atl. 2d 533, Wright's Estate (Ill.), 25 N. E. 2d 909, and Barbash v. Barbash (Fla.), 58 So. 2d 168. It seems clear that Tritt was Engler's agent and not the agent of, or trustee for, the daughters, and that Engler, by the delivery of the stock certificates to Tritt in the stated circumstances had not completely and irrevocably divested himself of ownership or control of the stock.

Accordingly, the order appealed from (dated July 15, 1952) is reversed and the cause is remanded for further appropriate proceedings.